**INVADER OIL CORP. et al. v. COMMERCE TRUST CO.**

No. 15295—Opinion Filed July 7, 1925.

**1. Election of Remedies—Conditions Precedent—Mistake as to Right.**

Election of remedies is a species of estoppel in pais to the operation of which knowledge of all the material facts affecting the remedy is essential, but in addition to a knowledge of the material facts there must be in fact and in law two inconsistent remedies, the pursuit of either of which would accomplish the same legal result. Unless both of these essential prerequisites exist, there can be no irrevocable election.

**2. Same — Ratification of Unauthorized Agency— When Election is Not.**

An election to pursue a trust fund by filing preferred claim with the State Bank Commissioner is not a ratification of the unauthorized act of an insolvent bank in receiving a check on funds already in its hands in payment of a note which it does not hold for collection, such preferred claim being filed under a mistaken belief that the money was actually paid and that the assets of the insolvent bank were enhanced to the amount of such payment, and this is especially true where the claim was withdrawn on learning the true facts.

**3. Banks and Banking—Collections—Authorized Agency—Insufficiency of Proof —Directing Verdict.**

Where authorized agency of an insolvent bank is relied on to validate an alleged payment of a note to it, and the evidence relied on to establish such agency is proof of the general course of dealing between the insolvent bank and its alleged principal during a number of years, which proof goes no further than to establish that when the alleged principal forwarded to the alleged agent commercial paper which was about to mature the agent had full authority to collect, renew, or substitute such paper so sent it, such proof is wholly insufficient to establish authority in the said agent to receive payment of a note which is not so placed in its hands and over which it has no control at the date of the alleged payment. Such defective proof does not raise an issue of fact as to agency to receive such payment and presents no question for determination by the jury.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District court, Muskogee County; Enloe V. Vernor, Judge.

Action by Commerce Trust Company against Invader Oil Corporation and N. Frank Wood. Judgment for plaintiff, and defendants bring error. Affirmed.

The petition in this case is in the usual form for actions upon promissory notes. By their answer defendants denied generally and specifically the allegations of plaintiff's petition, and then pleaded a number of special defenses, the only ones material here being the plea of payment, estoppel by election of remedies, ratification of unauthorized agency, and authorized agency of the Central State Bank, through which the payment was alleged to have been made.

The facts disclosed by the record are in substance these: That on February 13, 1922, Invader Oil Corporation by B. Frank Wood, and B. Frank Wood as an individual, executed to the Central State Bank of Muskogee their promissory note in the sum of $5,000 maturing August 1st of that year. This note was subsequently negotiated by the Central State Bank to the Commerce Trust Company, by indorsement and delivery before maturity. That the Central State Bank and Commerce Trust Company had been dealing with each other for a number of years, and the proof shows that in their dealings it was the custom for the Central State Bank to select the notes which it desired to negotiate, indorse and deliver them to the Commerce Trust Company. That on or about the first of each month the Commerce Trust Company would forward to the Central State Bank all notes which had been indorsed to it by said bank, and which would mature during the ensuing 30 days. That the Central State Bank upon receiving these notes so forwarded was authorized and empowered to collect, renew or substitute the same as its business judgment dictated, and to return the collections, renewal notes or substituted notes promptly to the Commerce Trust Company. That the note in question was so forwarded by the Commerce Trust Company to the Central State Bank prior to its maturity, and was by the Central State Bank at maturity indorsed "extended to November 1, '22," and returned promptly to the Commerce Trust Company. That thereafter and on August 18, 1922, the Central State Bank was in a failing condition and when it closed its doors at the close of business on that day they were never reopened for business. That on this last business day of the Central State Bank, B. Frank Wood went to the bank and withdrew therefrom a deposit in that bank to the credit of his brother, Owen Wood, trustee. The manner of this withdrawal was that B. Frank Wood drew a check for $8,000 to take up one $5,000 note and one $3,000 note, and by drawing another check on the account for $2,000, which was paid to him in currency. No money was paid to the Central

State Bank by B. Frank Wood in connection with this transaction. After the Central State Bank was taken over by the State Bank Commissioner, the Commerce Trust Company was informed by B. Frank Wood that the note here involved had been paid by him to the Central State Bank on August 18th. Thereupon the Commerce Trust Company filed a preferred claim with the State Bank Commissioner, seeking to recover the $5,000, which it alleged in its claim was paid by B. Frank Wood to the Central State Bank on August 18th, upon the theory that said $5,000 constituted a trust fund in its favor. Later the Commerce Trust Company learned the real facts concerning the alleged payment made by B. Frank Wood to the Central State Bank, and thereupon withdrew the preferred claim filed by it with the State Bank Commissioner, and commenced this action against the Invader Oil Corporation and B. Frank Wood to recover the face value of the note.

At the concluson of all the testimony in the case, plaintiff and defendants each filed their motions requesting a directed verdict. The trial court overruled the motion of defendants for a directed verdict and sustained that of the plaintiff. After unsuccessful motion for new trial, the defendants have brought the case here by petition in error with case-made attached for review. The parties will be hereafter referred to as plaintiff and defendants, respectively, as they appeared in the trial court.

Geo. S. Ramsey, Edgar A. de Meules, Villard Martin, and T. G. Logan, for plaintiffs in error.

Ezra Brainerd, Jr., Chas. P. Gotwals, and John T. Gibson, for defendant in error.

Opinion by LOGSDON, C. Defendants present their argument for reversal of this case under four propositions, stated in the brief as follows:

(1) Plaintiff had made a conclusive and binding election of remedies by pursuit of funds in the hands of the Central State Bank, which barred recourse against the makers of the note.

(2) Plaintiff ratified the payment of the note to the Central State Bank, which ratification discharged these defendants from further liability.

(3) The court erred in admitting incompetent evidence on behalf of plaintiff.

(4) There were two questions of fact which should have been submitted to the jury: (1) The question of agency, and (2) the question of ratification.

The first proposition is argued under four subdivisions: (a) That plaintiff having two remedies, each resting upon a different basic right, they were inconsistent; (b) therefore, the filing of a claim with the Bank Commissioner was an election; (c) this election was irrevocable; and (d) being a choice as one of two substantive rights as well as an election of remedies, it was irrevocable.

It is not considered that the contention is tenable as to the existence of two substantive rights. The only substantive right which plaintiff had was to enforce collection of its note. Whether this be done by recovery of a trust fund created for its payment or by judgment against the makers does not change the character of the substantive right. Either remedy effectuates only one result—collection of the debit—which is the primary and only substantive right of plaintiff. A choice of the remedy by which this right shall be enforced may operate as an estoppel to pursue any other, but it cannot change the character of the substantive right, which remains the same under either theory.

Was there such an election by plaintiff of its remedy as to become irrevocable and to now operate as an estoppel against its successful maintenance of the instant action?

Defendants rely on the general rule announced by this court in Herbert v. Wagg, 27 Okla. 674, 117 Pac. 209, and on text-writers, and on decisions from other jurisdictions announcing consonant principles. The applicable language in Herbert v. Wagg, supra, is this:

"The general rule is that when the law gives several means of redress or kinds of relief, predicated on conflicting theories, the election of one of them operates as a bar to the subsequent adoption of others."

Plaintiff in its brief concedes the correctness of this general rule, but questions its application to the facts in the instant case. Many of the authorities relied on by defendants to sustain their application of this general rule to the facts of the instant case have been carefully examined. From this examination, it is deduced that where a specific fund can be identified as a deposit or transfer of cash, or where merchandise has been delivered, thus, in either case, enhancing the value of assets, an election to pursue the specific funds or merchandise, or to file a claim for a pro rata share of the assets thus enhanced in value, where they have come under legal control, is an election and operates as an estoppel to pursue any other remedy. Herbert v. Wagg, supra; Vose v. Penny, 78 Okla. 238, 190

Pac. 97; Fowler v. Bowery Savings Bank (N. Y.) 21 N. E. 172; Beach v. Ficks (Ia.) 62 N. W. 753; Tishomingo Sav. Inst. v. Johnson Nesbitt & Co. (Ala.) 40 South. 503; Davenport v. Walker, 116 N. Y. 411; Moline Plow Co. v. Rodgers (Kan.) 37 Pac. 111; Claussen v. Head (Wis.) 85 N. W. 1028.

However, the estoppel by election of remedies is subject to the same precedent condition as other estoppels in pais. The election relied on to create the estoppel must be based on a right of election and must be made with full knowledge of the facts on which that right rests. The basic right of an election is the co-existence of two complete and inconsistent remedies, the pursuit of either of which will eventuate in the same ultimate legal result. In the instant case, the ultimate legal result sought is the collection of the debt. Were two inconsistent remedies co-existent in the instant case so that the pursuit of one by the plaintiff worked an abandonment of the other and now operates as an estoppel to the maintenance of this action?

Upon the representation of B. Frank Wood, one of the makers of the note, that he paid the note in full on the last day the Central State Bank of Muskogee was open for business, plaintiff filed its claim as a preferred creditor with the Bank Commissioner upon the theory, and express allegation in said claim, that said Central State Bank of Muskogee had received said sum of $5,000 in trust for the benefit of plaintiff. It was later learned that the bank had received no money on the note. It was merely a record transaction by which B. Frank Wood withdrew his brother's deposit of $10,000 from a bank which he knew to be in a failing condition. This was accomplished by his taking credit on the books of the bank for $8,000, to cover payment of one note for $5,000, and another for $3,000, and drawing $2,000 in currency.

In Bolles' Modern Law of Banking, vol. 1, p. 492, sec. 10, it is said:

"To recover the trust fund, it must have an actual, as distinguished from a recorded, or theoretical existence. The crediting of a fund without adding an actual corresponding amount creates no right in the beneficiary to recover the sum credited, whether the amount was actually in the bank's possession or not. The presence of the money credited in the bank is not enough; it must be an addition existing at the time its recovery is sought."

This text is supported by a long list of cases from seventeen of the states, and from the federal courts, while the only jurisdiction in which a different rule has been announced appears to be Mississippi. With this uniformity existing, the rule announced by the author may be said to be the established rule. Therefore, under the undisputed facts in this case, plaintiff had no right or title to any part of the assets of the Central State Bank of Muskogee as a trust fund. The filing of its claim as the beneficiary of a trust in the assets of the failed bank to the extent of $5,000 was the assertion of a claim which had no existence in fact or in law. No right to such a remedy ever existed in plaintiff's favor. Its mistake in so filing its claim was induced by the representation of B. Frank Wood, who now asserts the estoppel. In 20 C. J. 21, it is said:

"An election can exist only where there is a choice between two or more inconsistent remedies actually existing at the time the election is made. Hence the fact that a party misconceives his right or through mistake attempts to exercise a right to which he is not entitled, or prosecutes an action based upon a remedial right which he erroneously supposes he has, and is defeated because of such error, does not constitute a conclusive election, and does not preclude him from thereafter prosecuting an election based upon an inconsistent remedial right."

In 9 R. C. L. 962, sec. 9, the same principle is announced in this language:

"The principles governing election of remedies are necessarily based upon the supposition that two or more remedies exist. If in fact or in law only one remedy exists, there can be no election by the pursuit of another and mistaken remedy. It is a well-established rule that the choice of a fancied remedy that never existed and the futile pursuit of it, either because the facts turn out to be different from what the plaintiff supposed them to be, or the law applicable to the facts is found to be other than supposed, though the first action proceeds to judgment, does not preclude the plaintiff from thereafter invoking the proper remedy."

In consonance with these authorities are: Alliance Trust Co., Ltd., v. Choate, 76 Okla. 269, 185 Pac. 113; McIntosh v. Lynch, 78 Okla. 85, 188 Pac. 1079; Sauer v. Bradley, 87 Okla. 277, 210 Pac. 726; Tulsa Rig, Reel & Mfg. Co. v. Arnold, 94 Okla. 120, 221 Pac. 19; Barton v. O. K. & M. Ry. Co., 96 Okla. 119, 220 Pac. 929; Berry-Beall Dry Goods Co. v. Francis, 104 Okla. 81, 230 Pac. 496.

There is, therefore, no merit in the first proposition of defendants.

Was there a ratification by the plaintiff of the act of the Central State Bank in accepting a check against funds already in

its hands as payment of the note? It is insisted by defendants that ratification is clearly established by the act of plaintiff in filing its claim with the State Bank Commissioner. The nature of the claim so filed is a complete refutation of this contention. As heretofore stated, this claim was for recovery of a trust fund, mistakenly alleged by plaintiff to have been created when the makers of the note "paid to the said Central State Bank the said sum of $5,000." As a matter of fact and of law, no money was paid. Instead of the assets of the bank being enhanced by this transaction with B. Frank Wood, its assets were actually depleted by the sum of $2,000 in currency which he drew. Plaintiff has never asked to share with the general creditors the assets of the failed bank, and its claim to the alleged trust fund was withdrawn when it learned the facts.

Ratification, like election of remedies, is based on the precedent condition that there must have been full knowledge of all material facts at the time of the act relied on to establish ratification. In 31 Cyc. 1253, par. e. (1), the law of ratification is thus stated: ·

"As a general rule, in order that a ratification of an unauthorized act or transaction of an agent may be valid and binding. it is essential that the principal have full knowledge, at the time of the ratification, of all material facts relative to the unauthorized transaction. And in order to make this rule operative, the principal must know the actual facts and not merely what the agent supposed were the facts. If the material facts have been suppressed or are unknown, there is no ratification, and the principal is at liberty to repudiate his assent and assert his rights in other ways, and it matters not whether the principal's want of knowledge was due to design or undesigned concealment or willful representation on the part of the agent or his mere inadvertence, or whether the question arises between the principal and the agent or as to third persons."

This has long been recognized and enforced by this court as the correct rule: Minn. T. M. Co. v. Humphrey, 27 Okla. 694, 117 Pac. 203; Cargile v. Union State Bank, 40 Okla. 506, 139 Pac. 701; Garr, Scott & Co. v. Rogers, 46 Okla. 81, 148 Pac. 161; First Nat. Bank of Canadian v. Brewer, 73 Okla. 61, 174 Pac. 1077; Messman v. Lower, 84 Okla. 151, 202 Pac. 1014; Nowata Oil Syn. v. Com. Nat. Bank, 93 Okla. 6, 219 Pac. 339.

But it is urged by defendants, in effect, that because plaintiff relied on the statements made to it by B. Frank Wood, that he paid the note to the Central State Bank on the day the bank failed, and because of plaintiff's unwariness in not seeking to corroborate his statements or to verify their truth, it has accepted the withdrawal of his brother's deposit in the insolvent bank by B. Frank Wood as payment of its debt. This contention is untenable on its face. Equity and good conscience do not commend it nor do common-law principles or statutory language give it support.

Defendants' third proposition raises the question of the alleged error of the trial court in admitting over defendants' objection, and without proper identification, a letter from plaintiff's attorneys to the State Bank Commissioner withdrawing the preferred claim which had been filed by plaintiff. This matter arose in this way: On direct examination of defendants' witness, Pritchett, who was assistant liquidating agent of the Central State Bank, defendants showed that plaintiff had filed this $5,000 claim, but that the original had been returned to the plaintiff and that the Bank Commissioner had no copy. Plaintiff's attorney thereupon handed the original claim to defendants' attorney, who had it identified as defendants' exhibit No. 3, and introduced it in evidence. It was then agreed by the attorneys "that defendants' exhibit No. 3 is at this time in the possession of the plaintiff." Thereupon plaintiff offered and introduced in evidence over objection its exhibit No. 2, which is the letter complained of here. It was the letter on which the Bank Commissioner acted in returning the original claim to plaintiff. It must be conceded that the trial court erred in admitting this letter in evidence without identification, but it does not follow that this error was prejudicial. Defendants' witness having testified that the Bank Commissioner returned the claim to plaintiff without retaining a copy, and the attorneys having agreed in open court that the original claim was then in possession of plaintiff, its withdrawal as a claim was both established and admitted of record. As it has already been determined that plaintiff had no remedy such as was asserted in the claim filed and withdrawn, and was therefore not driven to an election, it is not apparent that any prejudice could have resulted to defendants from the erroneous admission of the letter, especially in view of the testimony and agreement of counsel as above stated.

It is finally insisted by defendants that the trial court erred in sustaining plaintiff's motion for a directed verdict. This is based upon the theory that there was sufficient evidence of agency and of rati-

fication to raise a disputed question of fact for determination by the jury. It has already been determined that there was no ratification shown. It remains to determine whether there was sufficient proof of authorized agency to raise an issue of fact. Proof relied on to establish agency consists of testimony of the general course of dealing between plaintiff and the Central State Bank during a number of years. This proof may be said to have satisfactorily established that the Central State Bank selected the notes which it desired to negotiate to plaintiff, indorsed them and sent them to plaintiff. About the first of each month plaintiff returned to the Central State Bank all notes so negotiated which would mature within the ensuing 30 days, and left it to the judgment of the Central State Bank whether these notes should be collected, extended or substituted, and this bank always attended to these details, including the notices sent to the makers. Although this source of dealing extended over a period of several years, no proof was offered to show that this claimed agency had ever before been exercised by the Central State Bank, or ratified or approved by plaintiff, except as to notes actually placed in its hands by plaintiff for the purpose of so handling. The note in question had been so handled under this general course of dealing and had been by the Central State Bank, at its maturity on August 1st, marked "Extended to Nov. 1, 22," and returned to plaintiff. There is nothing in the testimony to indicate that its authority in reference to this note was not entirely exhausted when it marked it extended and returned it to plaintiff on August 1st. This is a necessary conclusion to be drawn from the proof of the general course of dealing between the two. Defendants deny that the extension of the note was made with their knowledge or consent, but the fact remains that no tender of payment was made at its maturity and date of extension. Also remaining is the very cogent fact that when B. Frank Wood, in his effort to withdraw his brother's deposit from this insolvent bank, claims to have paid the note in suit, he accepted as evidence of such payment a purported copy of a note maturing November 1st instead of August 1st, purporting to be signed by the Invader Oil & Refining Company instead of Invader Oil Corporation, and in which his name as an individual maker did not appear. This court takes judicial notice of the fact that there is a corporation known as Invader Oil & Refining Company, because it is one of the parties of record in cause No. 14563 pending in this court. The only intrinsic evidence furnished by this purported copy to identify the original transaction which it represents with the original transaction represented by the note in suit is that it is also for the sum of $5,000.

Since the course of dealing between plaintiff and the Central State Bank relied on to establish authorized agency of the latter, does not tend to establish such agency except as to notes actually forwarded by plaintiff to said bank for the purpose of collection, renewal or substitution, and since the note in question was not so forwarded and entrusted to the bank at the time of the transaction relied on, the proof was wholly insufficient to raise an issue of fact as to authorized agency. With the record in this condition, the trial court did not commit reversible error in sustaining plaintiff's motion for a directed verdict. Frank H. Harrah & Co. v. First Nat. Bank of Tonkawa, 26 Okla. 620, 110 Pac. 725; Offut v. Wagoner, 30 Okla. 458, 120 Pac. 1018; Fitzpatrick v. Nations, 30 Okla. 462, 120 Pac. 1020; Conwill v. Eldredge, 71 Okla. 223, 177 Pac. 79; Depuy v. Selby, 76 Okla. 307, 185 Pac. 107.

The judgment of the trial court should be in all things affirmed.

By the Court: It is so ordered.

Note.—See under (1) 20 C. J. pp. 21, 23, §17; p. 35, §28. (2) 2 C. J. pp. 476, 478, §93. (3) 2 C. J. p. 964, §733.